UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

11 CIV 0775

-----------------------------------------------------------------X

JEFFERSON RODRIGUEZ,

**COMPLAINT**
**WITH JURY DEMAND**

Plaintiff,

-against-

CITY OF NEW YORK, MARTHA STARK,
Former Commissioner of the City
Of New York DEPARTMENT OF FINANCE,
MICHAEL HYMAN interim Commissioner
Of the City of New York DEPARTMENT
OF FINANCE, DAVID FRANKEL,
As Commissioner of the City of New York
Department Of Finance, NEW YORK CITY
DEPARTMENT OF FINANCE, LINDSAY EASON,
As Sheriff of City Of New York, NEW YORK
CITY SHERIFF'S DEPARTMENT, PRI CON
INVESTIGATIONS, NOEL BRUEN, NEW YORK CITY
OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS,
and NANCY GOODMAN, Finance Department Advocate,
RAYMOND W. KELLY, as Police Commissioner
Of the New York City Police Department,
DETECTIVE LEONARD MASTROGIACOMO,
NEW YORK CITY DEPARTMENT OF INVESTIGATIONS,
ROSE GILL HEARN, as Commissioner of the
New York City Department of Investigations, all individuals
Are being sued in their individual and official
Capacities,

Defendants.

-----------------------------------------------------------------X

Plaintiff, JEFFERSON RODRIGUEZ ("RODRIGUEZ"), by and through his

attorneys, the law firm of CRONIN & BYCZEK, LLP, as and for their Complaint against

Defendants, respectfully set forth the following:

## NATURE OF ACTION

1.     This action is hereby commenced for the purpose of seeking to secure protection of, and to redress the deprivation of, rights secured by the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, 42 U.S.C. §1983, 42 U.S.C. §1985 and 42 U.S.C. §1988, New York State Executive Law §296, and New York City Human Rights Law §8-107 et. seq., providing for relief based upon Defendants' unlawful employment practices of engaging in discrimination based upon Plaintiffs' race, natural origin and retaliation against Plaintiff for engaging in the protected activity of formally complaining of said discrimination.

## JURISDICTION

2.     The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §1343(3) and (4), 28 U.S.C. §1331, as well as 42 U.S.C. §2000e through §2000e (15).

3.     This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. §1367.

4.     Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

5.     The rights, privileges and immunities sought herein to be redressed are those secured by the First Amendment freedom of speech and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, and provisions against race and natural origin discrimination and retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, 42

U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1988 along with applicable provisions of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

6.    On or about September 27, 2010, Plaintiff, RODRIGUEZ, in accordance with applicable law, filed a Verified Complaint with the United States Equal Employment Opportunity Commission ("EEOC"), which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended.

7.    Said Verified Complaint charged that Defendants engaged in unlawful employment discrimination practices based upon race, natural origin and in retaliation for engaging in protected activity.

8.    On October 29, 2010, the EEOC issued a "Right to Sue" Letter advising Plaintiff, of the completion of their prerequisites to file suit in federal court. Plaintiff, received said Right to Sue Letter on or about November 5, 2010. A copy of the "Right to Sue" Letter issued to Plaintiff RODRIGUEZ is annexed hereto as **Exhibit "A".**

## VENUE

9.    Venue is proper within the Southern District of this Court, County of New York, State of New York, as the course of Defendants' conduct took place within the boundaries of the County of New York, State of New York, and the instant causes of action are based upon violations of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

**PARTIES**

10.    Plaintiff RODRIGUEZ is a Hispanic male of Puerto Rican descent and a citizen of the United States and a resident of Queens County, State of New York. He has registered his opposition to the discriminatory practices of Defendants and thus is a member of a protected class. At all times relevant to this action, Plaintiff RODRIGUEZ was a uniformed member of the CITY Sheriff's Office from November 1993 until his termination on March 12, 2010.  At the time of his illegal termination RODRIGUEZ was a Sergeant.

11.    Defendant CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the CITY and State of New York. CITY is authorized by law to maintain a Department of Finance that acts as its agent and for which it is ultimately responsible. The New York City Sheriff's Office is a division of the Department of Finance, and is the chief civil law enforcement office for the CITY.

12.    Defendant,  MARTHA E. STARK ("STARK") was Commissioner of the CITY Department of Finance from February 2002 and was acting in such capacity at all times relevant herein up to her resignation on or about April 28, 2009. STARK was Plaintiff's supervisor. STARK is sued in her individual and official capacity.

13. Defendant MICHAEL HYMAN ("HYMAN") was Interim Commissioner of the CITY Department of Finance from April 28, 2009 through September 8, 2009 and was acting in such capacity at all times relevant herein. HYMAN was Plaintiff's supervisor. HYMAN is sued in his individual and official capacity.

14.    Defendant DAVID FRANKEL ("FRANKEL") has been Commissioner of the CITY Department of Finance since September 8, 2009 and is  acting in such capacity

at all times relevant herein. FRANKEL is Plaintiff's supervisor. FRANKEL is sued in his official capacity.

15.    Defendant, THE NEW YORK CITY DEPARTMENT OF FINANCE, is the local taxation agency of the City of New York responsible for collection of parking fees from parking meters and parking violations, administration and collection of the City's business and excise taxes, and assessment and collection of property taxes and maintaining tax maps and property records.

16.    Defendant LINDSAY EASON ("EASON") was Sheriff for the CITY from January 2002 until his retirement in 2010. EASON, at all times relevant to this Complaint, was RODRIGUEZ's superior officer and supervisor. He is sued in his individual and official capacity.

17.    Defendant, PRI CON INVESTIGATIONS, ("PRI CON") is a private investigation firm located in Mahopac, NY, who was hired to conduct surveillance and an investigation of RODRIGUEZ by the New York City Law Department on behalf of the Sheriff's Office.

18.    Defendant, NOEL BRUEN, ("BRUEN") at all times hereinafter mentioned, is the sole shareholder and owner of "PRI CON" and a private investigator hired by the New York City Law Department to conduct an investigation of RODRIGUEZ. Bruen is being sued in his individual and official capacity.

19.    Defendant, NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS ("OATH") is an independent agency created as part of the Charter revisions enacting the City Administrative Procedure Act and is responsible for conducting administrative hearings for other City agencies, boards, or commissions. Defendant "OATH" by Administrative Law Judge Kevin Casey conducted the hearing regarding the

charges brought against RODRIGUEZ, found RODRIGUEZ guilty on some of said charges and recommended termination.

20. Defendant, NANCY GOODMAN, ("GOODMAN") at all times hereinafter mentioned, is the Department Advocate of the office of the Department Advocate of the New York City Department of Finance, and, as such, has the powers, responsibilities and duties of that office. She is being sued in her individual and official capacity.

21. Defendant, RAYMOND KELLY, ("KELLY") at all times relevant to this Complaint was the Commissioner of the New York City Police Department (NYPD), the Chief Executive of the NYPD, and Defendant, KELLY, is sued herein in his individual and official capacities.

22. Defendant, LEONARD MASTROGIACAMO, ("MASTROGIACAMO") at all times hereinafter mentioned, is a member of the New York City Police Department with the rank of Detective, and, as such, has the powers, responsibilities and duties of that rank. His superior officer is Defendant "KELLY"

23. Defendant, THE NEW YORK CITY DEPARTMENT OF INVESTIGATIONS, ("DOI") is the duly authorized agency within the governmental structure of Respondent CITY OF NEW YORK responsible for investigations of city employees and contractors who may be engaged in corrupt or fraudulent activities or unethical conduct, referring such matters for prosecution if warranted. Investigations may involve any agency, officer, elected official or employee of the City of New York, as well as those who do business with or receive benefits from the City of New York.

24. Defendant, ROSE GILL HEARN, ("HEARN") at all times hereinafter, is the Commissioner of the New York City Department of Investigations, and, as such, has the powers, responsibilities and duties of that office. She is being sued in her individual and official capacity.

## FACTS UNDERLYING PLAINTIFFS' CLAIMS

25.     Plaintiff RODRIGUEZ was formerly employed as a Sergeant Deputy Sheriff in the CITY Sheriff's Office, a division of the Department of Finance, where he worked from November 29, 1993 until his termination on March 12, 2010.

26.     Until he exercised his First Amendment right to complain about the discriminatory treatment he was subjected to in his employment with Defendant CITY, RODRIGUEZ always received excellent performance evaluations and never had any disciplinary problems.

27.     On July 12, 2006 RODRIGUEZ along with seven other fellow sheriffs filed a federal lawsuit in the United States Southern District alleging race, national origin discrimination and retaliation against his employer several of the defendants herein City of New York Martha Stark and Sheriff Lindsay Eason, under Docket No. 06-CV-1555.

28.     On January 7, 2008 the City of New York, Martha Stark and Lindsay Eason settled the aforementioned lawsuit for $575,000.00. The final settlement checks were received on or about March 15, 2008.

29.     On October 7, 2008 while acting within the scope of his employment and carrying out his duties as a New York City Sergeant in the Sheriff's office and while driving a Department of Finance vehicle, RODRIGUEZ was involved in an automobile accident causing property damage and personal injury to RODRIGUEZ.   As is protocol

RODRIGUEZ filed the appropriate paperwork concerning this line of duty automobile accident including an application for worker's compensation benefits. RODRIGUEZ was disabled and unable to work as a result of the Line of Duty ("LOD") injury.

30.    RODRIGUEZ was suspended without pay pursuant to Section 75(3) of the Civil Service Law on June 30, 2009.

31.    RODRIGUEZ was suspended as a result of Charges and Specifications brought against him by Defendant NEW YORK CITY DEPARTMENT OF FINANCE ranging from unauthorized outside employment, perjury, filing false instruments and various other violations of the New York City Department of Finance Code of Conduct, New York Workers' Compensation Law, and the New York State Penal Law.

32.    RODRIGUEZ was served with a letter, dated June 30, 2009, from Defendant NANCY GOODMAN of the Department Advocate's Office of the New York City Department of Finance advising him that an informal conference had been scheduled for Thursday, July 23, 2009, at 11:00am at 345 Adams Street in Brooklyn, NY.

33.    On or shortly after July 27, 2009, RODRIGUEZ received a letter, dated July 27, 2009, from Informal Conference Leader, Ellen Young, advising him that based upon evidence presented to her at the informal conference of July 23, 2009, she found that all 13 Charges and Specifications had been established and that she was recommending that RODRIGUEZ be terminated.

34.    On or shortly after March 3, 2009, RODRIGUEZ received a letter dated March 3, 2009 from Defendant NEW YORK CITY DEPARTMENT OF FINANCE advising him that a trial on the Charges and Specifications had been scheduled for March 25, 2009 at 9:30am at the Office of Administrative Trials & Hearings located at 40 Rector Street, New York, NY 10006.

35.    Shortly thereafter the City of New York controverted RODRIGUEZ's claim for Worker's Compensation Benefits and inexplicably embarked on a pattern or harassment and abuse alleging that RODRIGUEZ was not even in the vehicle at the time of the accident.

36.    RODRIGUEZ prevailed over the City and his worker's compensation claim was affirmed.    The City of New York appealed the decision of the Worker's Compensation Board.    Upon information and belief the Sheriff's office rarely, if ever, controverts Worker's Compensation Benefit claims on behalf of white officers or officers who have not engaged in the protected activity of filing complaints of discrimination.

37.    As a result of the City's continued retaliatory acts RODRIGUEZ was forced to use his own time/accruals despite RODRIGUEZ's numerous submissions of medical documentation and proof.

38.    After a full Worker's Compensation Board Hearing the Administrative Law Judge ruled in RODRIGUEZ's favor.    Again in retaliation the Sheriff's office refused to pay RODRIGUEZ pursuant to the Judge's ruling and without cause filed an appeal of the ruling.    Upon information and belief the Sheriff's office rarely, if ever, appeals Worker's Compensation decisions awarded to white officers and/or officers who have not engaged in the protected activity of reporting discrimination.

39.    RODRIGUEZ was successful on appeal and incredulously in retaliation the City continued to refuse to pay RODRIGUEZ despite two independent judicial findings that he was deserving of the benefits.

40.    In December 2009 having run out of sick time and accruals due to the City's failure to comply with the judicial rulings, RODRIGUEZ requested and was

refused the ability to "borrow time". All other similarly situated white sheriffs and/or sheriffs who have not engaged in the protected activity of reporting discrimination are permitted the ability to "borrow time".

41.    Eventually, a full hearing of the bogus Disciplinary Charges was conducted on January 6 and 7, 2010 before Administrative Law Judge Kevin Casey at the Office of Administrative Trials and Hearings.

42.    On January 10, 2010 having been cleared by his physician to return to full duty, RODRIGUEZ reported for duty with the appropriate medical documentation and was refused the right to work and was sent home.

43.    On January 19, 2010, RODRIGUEZ was notified by Nancy Goodman, the Department Advocate for the New York City Department of Finance, that pursuant to Civil Service Law, Section 73, he was not fit to return to active duty status until he was cleared by a doctor chosen by the City of New York.

44.    The Sheriff's office sent RODRIGUEZ for a psychiatric evaluation without cause or right forcing RODRIGUEZ to undergo extensive psychiatric examinations and evaluations. On January 21, 2010 again RODRIGUEZ presented the appropriate medical documentation from a physician clearly him for work.

45.    On January 27, 2010 RODRIGUEZ reported for duty and was falsely arrested by the New York City Police Department for being on New York City property without authority – "criminal trespass". Upon information and belief the Sheriff has never done this.

46.     From January 27, 2010 to present Defendant "KELLY" and NYPD have continued to maliciously prosecute RODRIGUEZ on the bogus "criminal mischief" charge.

47.     Notwithstanding RODRIGUEZ's three doctors evaluations in early January and February 2010 finding him fit for duty, the Sherriff's office on Feb 8, 2010 refused to permit RODRIGUEZ to return to full duty despite the medical documentation and continued his "involuntary leave status".    RODRIGUEZ was advised of right to object to this finding and his right to request a hearing and he demanded a full and complete hearing under Civil Service Law Section 72(1) which the City refused to grant him.

48.     On or shortly after March 5, 2010, RODRIGUEZ received a copy of Administrative Law Judge Casey's (hereafter referred to as ALJ Casey) Report and Recommendation, dated March 5, 2010, wherein ALJ Casey found that the Department of Finance had proved the main charges brought against RODRIGUEZ and also recommended termination.

49.     On or shortly after March 12, 2010, RODIRGUEZ received a letter from David Frankel, the Commissioner of the Finance Department of the City of New York, advising RODRIGUEZ that he was adopting the findings of fact and the recommended penalty contained in ALJ Casey's Report and Recommendation, and that he was terminated.

50.     RODRIGUEZ contends that an examination of the transcript and/or record of the hearing held before ALJ Casey on January 6 and January 7, 2010 reveals that there is no substantial evidence to support a finding of guilt on the charges and specifications where ALJ Casey made such a finding.  On this record, such findings were arbitrary, capricious, and against the weight of the evidence adduced at the hearing of significant note is the obvious.

51.     As set forth in his Report and Recommendation, dated March 5, 2010, ALJ Casey found RODRIGUEZ guilty on Charges 1, 5 and 6; he found that Charges 2, 3, 4, 9, and 10 were duplicative and sustained them on that basis, and that they would not be considered for additional penalty purposes. He dismissed Charges 7, 8, 11, 12 and 13.

52.     RODRIGUEZ respectfully submits that all of the charges are linked to and are dependent on one simple fact; and that is whether or not he engaged in unauthorized employment while he was out on sick leave. RODRIGUEZ maintains that he did not work or engage in any unauthorized outside employment activities while he was out on sick leave. Defendant conspired together to offer fraudulent evidence and testimony at his disciplinary hearing in an attempt to falsely prove that he worked or engaged in unauthorized outside employment activity.

53.     There were only two witnesses called by the Department of Finance at RODRIGUEZ's hearing who ostensibly may have had personal knowledge of RODRIGUEZ's activities during the time in question in an attempt to prove that he was working without authorization while out on sick leave. The first was "BRUEN" who testified that he was a private investigator with the firm known as "PRI CON" Investigations located in Mahopac, New York. He testified that he had been a private investigator for 17 years and had been asked by the City of New York to conduct an investigation and surveillance of RODRIGUEZ.

54.     The evidence adduced through "BRUEN's" testimony rose only to the level of suspicion, bare surmise, conjecture and/or speculation. The false testimony by "BRUEN" was deliberately couched to infer facts that were untrue namely that "BRUEN" had observed RODRIGUEZ working while out sick.

55.     The only other witness to testify for the Department of Finance at the hearing and who at least has some, if not much, personal knowledge of any facts in this case was NYPD Detective Leonard MASTROGIACOMO who was assigned to the DOI. His responsibilities include handling criminal matters regarding any City related business, City

employees for the agencies, crimes against the City. MASTROGIACOMO testified that he conducted an investigation at the request of the Department of Finance on RODRIGUEZ sometime in mid-2009.

56.     The Detective testified that on February 11, 2009, he along with Sgt. Penia and Detective Casablanca were staked outside RODRIGUEZ's residence for a short period of time when they saw RODRIGUEZ get into his car and they proceeded to follow him to the "Perfection Nightclub" which is located in Queens, New York. Once they saw RODRIGUEZ enter the club, they ended their surveillance for the day. All this evidence proves is that RODRIGUEZ was engaged in driving to a club.

57.     MASTROGIACOMO also testified that on April 15, 2009 he and Detective Casablanca were observing the area around the "Cityscapes Club" when they observed RODRIGUEZ's car parked about 2 blocks away. MASTROGIACOMO testified falsely that RODRIGUEZ was working at "Cityscapes". Further, MASTROGIACOMO falsely testified that RODRIGUEZ told him he was working at another club "Perfection".

58.     MASTROGIACOMO's testimony was clearly contradicted and refuted by at least two witnesses who testified on RODRIGUEZ's behalf. RODRIGUEZ called Joel Weitzman who testified that he was employed by Ker Enterprises of New York, LTD. as the general manager of "Perfection" during the time in question. He testified that RODRIGUEZ was never employed as an armed security guard or to provide security at Perfection.

59.     RODRIGUEZ also called James Wilson who testified that he had been the owner of "Cityscapes" since 1999. He gave testimony as to the various entrances to the club, specifically stating that it was impossible gain entrance to the club from the underground parking garage as there were no entrances down there (thus clearly contradicting and refuting Mr. Bruen's testimony as to his observation that he observed RODRIGUEZ enter the club from the garage). He further testified that he employed a security company in 2008, couldn't remember its name, but knew that name, Spencer

Paroni, of the person who owned the company. He stated that after Mr. Paroni died, he continued to employ Mr. Paroni's security people and paid them in cash.

60.     Mr. Wilson testified that RODRIGUEZ was never an employee at "Cityscapes" and he never paid RODRIGUEZ to provide security services whether it was his company or RODRIGUEZ individually.

61.     Notwithstanding this clear and convincing evidence from two non-party witnesses ALJ Casey falsely credited defendant witnesses and upon information and belief was coerced by and/or conspired with Defendant "GOODMAN", "FRANKEL" and "HEARN".

62.     RODRIGUEZ filed an appeal of the decision by FRANKEL to terminate him in accordance with the Report and Recommendation of the Administrative Law Judge who presided over RODRIGUEZ's disciplinary trial. The appeal is pending in the Supreme Court of the State of New York and its transfer to the Appellate Division : First Department has been directed.

### AS AND FOR A FIRST CLAIM PURSUANT TO 42 USC §1981 AGAINST ALL DEFENDANTS

63.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-62 with the same force and effect as if fully set forth herein.

64. Throughout the events cited herein, the individual Defendants, while acting under the color of law, subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the equal protection and due process guarantees of the 14th Amendment of the Constitution, civil rights as guaranteed under Article I, Section II, of the New York State Constitution.

65.     Plaintiff has been deprived of his Constitutional rights to be free of

discrimination based upon race, national origin and retaliation and has been damaged in his employment and have suffered emotional distress and conscious pain and suffering as a result of these actions.

66.     The actions of Defendants, in depriving Plaintiff of his constitutional and civil rights, as herein before stated, were willful and malicious acts.

67.     As a result of the aforesaid wrongful, reckless and intentional acts of Defendants, Plaintiff has been damaged in the amount of $5,000,000.00.

68.     Based on the foregoing, Plaintiff is entitled to punitive and exemplary damages in the sum of $5,000,000.00.

## AS AND FOR A SECOND CLAIM PURSUANT TO 42 USC §1983 AGAINST ALL INDIVIDUAL DEFENDANTS

69.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-68 with the same force and effect as is fully set forth herein.

69.     The individual Defendants have embarked on a course of conduct that deprived Plaintiff of his rights under the United States Constitution, federal and state law.

70.     The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by Plaintiff are examples of Defendants' violations of Plaintiff's civil rights.

71.     The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiffs of their rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of their rights to equal protection due process under the 14th Amendment.

72.     By these actions, Defendants have jointly and separately deprived Plaintiff of

his rights under the 14th Amendment to the United States Constitution, in violation of 42 USC §1983.

73. As a consequence of Defendants' unlawful actions, Plaintiff demands damages in the amount of $5,000,000.00.

## AS AND FOR A THIRD CLAIM AGAINST DEFENDANTS FOR FIRST AMENDMENT RETALIATION

74. Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraphs 1-73 with the same force and effect as is fully set forth herein.

75. Plaintiff has been unlawfully subjected to a hostile work environment and harassment in retaliation for exercising his First Amendment rights to free speech.

76. The aforementioned conduct on the part of Defendants was without cause or justification and violated Plaintiff's rights, civil rights, privileges and immunities as guaranteed by the First Amendment of the United States Constitution as well as the Constitution of the State of New York and the New York City Administrative Code and Human Rights Law.

77. The actions of Defendants in depriving Plaintiff of his constitutional and civil rights were willful and malicious acts.

78. As a direct and proximate consequence of Defendants' unlawful, discriminatory and harassing conduct, Plaintiff has suffered losses of benefits and privileges of their employment with the Sheriff's Office, been damaged professionally and economically, as well as suffered physical and emotional pain and suffering.

79. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $5,000,000.00, and punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A FOURTH CLAIM PURSUANT TO 42 USC §1985

80. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1-79 with the same force and effect as is fully set forth herein.

81. Defendants have conspired with and amongst each other to deprive Plaintiff of his rights under the United States Constitution, federal, state and city laws.

82. The named Defendants have conspired to violate Plaintiff's civil rights pursuant to 42 USC § 1985 when they agreed together to investigate, arrest, prosecute and give false testimony against him; to implement, direct and/or participate in a program to retaliate, harass and create a hostile work environment against Plaintiff solely because of his race and national origin and in opposition to discrimination and whistle blowing.

83. Such policy and practice is an intentional and concerted effort by Defendants to disparage Plaintiff.

84. By reason of the aforementioned facts and conspiracy, each of the individual Defendants has violated 42 USC § 1985.

85. The actions and omissions of Defendants, in depriving Plaintiff of his constitutional and civil rights, by their participation in the discriminatory and harassing and retaliatory conduct, as herein stated, were willful and malicious acts.

86. Because of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00, and punitive and exemplary damages in the sum of $5,000,000.00.

## AS AND FOR A FIFTH CLAIM IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 AS AMENDED

87. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-86 with the same force and effect as is fully set forth herein.

88. Based upon the aforementioned facts, Defendants discriminated against Plaintiff as a result of his race and national origin and in retaliation for exercising his First Amendment rights.

89. Defendants intentionally and willfully discriminated against and harassed Plaintiff and permitted Plaintiff to be discriminated against and harassed in his employment on account of his race and national origin and in retaliation for opposition to discrimination, thereby violating §704(A) OF Title VII of the Civil Rights Act of 1964 as amended and 42 USC §2000e-3(a).

90. No action was taken by Defendants or its agents to stop the harassment of Plaintiff, thereby contributing to a hostile working environment.

91. As a result of the Defendants' conduct, Plaintiff has suffered economic loss, pain, humiliation, embarrassment, extreme emotional distress and continues to suffer to this day, and further as a result of Defendants' conduct, Plaintiff has suffered both professionally and personally.

92. As a result of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally, Plaintiff seeks punitive and exemplary damages in the sum of $5,000,000.00 against the individual Defendants.

## AS AND FOR A SIXTH CLAIM PURSUANT TO NEW YORK STATE EXECUTIVE LAW §296

93.  Plaintiffs repeats, reiterates and realleges each and every allegation contained in paragraphs 1-92 with the same force and effect as if fully set forth herein.

94.  Based on the foregoing, Defendants intentionally and willfully discriminated against Plaintiff in his employment on account of race and national origin and in opposition to discriminatory practices in violation of New York State Executive Law §296. Plaintiff has continuously been victimized by Defendants for their opposition to discrimination and a hostile working environment created by Defendants.

95.  Even though Defendants were aware of Plaintiff's complaints and the existence of a hostile work environment, no actions were taken by Defendants in an effort to correct the discriminatory conduct on behalf of the individual Defendants.

96.  Such conduct on the part of Defendants and all others, without cause or justification, violated the Plaintiff's civil rights guaranteed under the New York State Constitution and New York State Executive Law § 296.

97.  As a result of Defendants' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Executive Law § 296, Plaintiff has suffered economic loss, pain, humiliation and extreme emotional distress.

98.  As a result of the foregoing wrongful, careless and intentional acts of Defendants, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00.

## AS AND FOR A SEVENTH CLAIM PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE SECTION 8-107(1) et. seq.

99.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-98 with the same force and effect as is fully set forth herein.

100.  Defendants discriminatory conduct based on Plaintiff's race and national origin, as well as in retaliation for his whistle blowing and complaints of discriminatory conduct by other members of the Department of Finance and in retaliation for his opposition to discrimination, constitutes discrimination in violation of the New York City Administrative Code § 8-107(1) et.seq. and the New York City Human Rights Law.

101.  The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of Defendants.

102.  Because of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00.  Additionally Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00.

## AS AND FOR A EIGHTH CLAIM PURSUANT TO 42 U.S.C. §1983

103.  Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs 1-102 with the same force and effect as is fully set forth herein.

104.  Defendants deprived RODRIGUEZ of the due process of law guaranteed to him by the Fourth and Fourteenth Amendments to the US Constitution pursuant to 42 U.S.C. §1983.  RODRIGUEZ was unlawfully seized and detained. RODRIGUEZ was subsequently unlawfully arrested, imprisoned and maliciously prosecuted by Defendant MASTROGIACOMO without any cause or provocation whatsoever.

105.  RODRIGUEZ was subjected to an illegal search of his property, destruction

of his property, had his rights to privacy violated and was subjected to abusive process and intentional infliction of emotional distress.

106.   As a direct result of Defendants action RODRIGUEZ was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments of the US Constitution being more particularly Plaintiff's rights: to be secure in his person, papers, and effects against unreasonable searches and seizures; not to be deprived of life, liberty and property without due process of law; to be informed of the nature and cause of the accusation against him as secured to him under the Fourteenth Amendment of the US Constitution; and the right to the equal protection of the laws secured by the Fourteenth Amendment of the US Constitution.

107.   That the said detention, arrest and imprisonment was caused by the Defendants, their agents, servants and employees without an warrant or other legal process and without authority of the law and without any reasonable cause or belief that RODRIGUEZ was in fact guilty of crimes.

108.   The conduct and actions of the individual Defendants acting under color of law in conspiring to falsify and fabricate an account of the events surrounding the arrest and prosecution of RODRIGUEZ and in making false statements regarding said events was done intentionally, maliciously and/or with reckless disregard of the natural and probable consequences of their acts, was done without lawful justification and was designed to and did cause specific pain and suffering, mental anguish, extreme emotional distress, humiliation and embarrassment in violation of RODRIGUEZ's constitutional rights as guaranteed under 42 U.S.C. §1983, Fourth,  and Fourteenth Amendments to the U.S. Constitution.

109.    That the Defendants acted within the scope of their authority and within the scope of their employment, detained and imprisoned RODRIGUEZ even though the Defendants had the opportunity to know or should have known that the matters hereinbefore were alleged wrongfully, unlawfully and without sufficient charges having been made against RODRIGUEZ, directed that RODRIGUEZ be searched and placed in confinement.

110.    That the Defendant police officers conspired together to violate RODRIGUEZ's rights in that the individual officers acted in concert to unlawfully violate RODRIGUEZ's rights.

111.    RODRIGUEZ was innocent of all criminal charges and did not contribute in anyway to the conduct of the Defendant police officers and was forced by the Defendants to submit to the aforesaid actions entirely against his will.

112.    That as a result of the aforementioned accusations made by the Defendants acting under their employment and within the scope of their authority, made falsely, publicly and maliciously, RODRIGUEZ was compelled to appear in criminal court.

113.    That the Defendants intended to confine the RODRIGUEZ; in that RODRIGUEZ was conscience of the confinement; RODRIGUEZ did not consent to the confinement; and that the confinement was not otherwise privileged.

114.    That by reason of the violations of RODRIGUEZ's rights, RODRIGUEZ was subjected to physical and emotional harms, damage to his credit and circumstances, loss of employment and loss of employment opportunities.

115.    That by reason of the aforesaid RODRIGUEZ has been damaged in the sum of Five MILLION DOLLARS ($1,000,000.00) and is entitled to an award of punitive

damages.

## AS AND FOR A NINTH CLAIM
## FOR NEGLIGENT HIRING, SUPERVISION AND RETENTION

116.    Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs 1-115 with the same force and effect as is fully set forth herein.

117.    That the Defendants were negligent, careless and reckless in hiring and retaining, properly training and supervising, as and for its employees, the above-named individual Defendants and unidentified individuals, in that the said Defendants lacked the experience, deportment and ability to be employed by New York City in that Defendant New York City failed to exercise due care and caution in its hiring practices and in particular, in hiring Defendants who lacked the mental capacity and the ability to function as employees of New York City; failing to investigate the above-named Defendants' background in that it hired and retained as employees of the Department individuals who were unqualified in that the Defendants lacked the maturity, sensibility and intelligence to be employed when hired to be police officers; also in that Defendant New York City failed to train their employees in the proper method of restraining a suspect; and to otherwise act as reasonably prudent police officers; failed to give them proper instruction as to their deportment, behavior and conduct as representatives of New York City.

118.    That the aforesaid occurrences and resulting injuries to the Plaintiff were caused wholly and solely by reason of the negligence of the Defendants, its agents, servants and employees without any negligence on the part of the Plaintiff.

119.    That by reason of the aforesaid RODRIGUEZ has been damaged in the sum

of FIVE MILLION DOLLARS ($5,000,000.00).

## JURY TRIAL

120.  Plaintiff requests a jury trial on all questions of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this honorable Court grant the following relief:

1.    Declare that the aforementioned actions of Defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution and New York City Human Rights Law and Administrative Code along with all applicable statutes;

2.    Declare that the aforementioned discriminatory actions of Defendants were in violation of New York State Executive Law § 296, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Title VII of the Civil Rights Act of 1964, as amended;

3.    As and for Plaintiff's First Claim, grant Plaintiff the sum of $5,000,000.00, along with punitive and exemplary damages in the amount of $5,000,000.00;

4.    As and for Plaintiff's Second Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

5.    As and for Plaintiff's Third Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

6.    As and for Plaintiff's Fourth Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

7.    As and for Plaintiff's Fifth Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

8.    As and for Plaintiff's Sixth Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

9.    As and for Plaintiff's Seventh Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

10.    As and for Plaintiff's Eighth Claim, grant Plaintiff the sum of $5,000,000.00

11.    As and for Plaintiff's Ninth Claim, grant Plaintiff the sum of $5,000,000.00

12.    Grant Plaintiff all costs for this action, including reasonable attorney's fees; and

13.   Grant Plaintiff such other and further relief as this Court may seem just and proper.

Dated:       Lake Success, New York
             February 2, 2011

                              Yours etc,
                              Cronin & Byczek, LLP


                              Linda M. Cronin (LC0766)
                              Attorneys for Plaintiff
                              1983 Marcus Ave, Suite C-120
                              Lake Success, New York 11042
                              (516) 358-1700

*Exhibit "A"*

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jefferson Rodriguez<br>42-32 Clearview Exp<br>Bayside, NY 11361 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2011-00004** | Ashraf A. Ahmed,<br>**Investigator** | **(212) 336-3781** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Elizabeth Grossman_                     10/29/10

Enclosures(s)

**Elizabeth Grossman,**
**Acting District Director**

(Date Mailed)

cc:
Director
EEO
NYC DEPARTMENT OF FINANCE
31 Chambers Street
New York, NY 10017

Linda M. Cronin, Esq.
1983 Marcus Avenue, Suite C-120
Lake Success, NY 11042

$ 00.44⁰
PITNEY BOWES
NOV 01 2010
02 1A
0004601382
MAILED FROM ZIP CODE 10004

FIRST CLASS

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

Ms. Linda Cronin, Esq., Representative for the
Charging Party
1983 Marcus Ave.,
Suite # C-120
Lake Success, NY 11042

11042∂2017 C053