```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JEFFERSON RODRIGUEZ,                    :
                                        :
                    Plaintiff,          :
         -v-                            :
                                        :
THE CITY OF NEW YORK, MARTHA E. STARK,  :
DAVID FRANKEL, NANCY GOODMAN, DETECTIVE :    11cv775 (DLC)
LEONARD MASTROGIACOMO, in their         :
individual and official capacities,     :    OPINION & ORDER
                                        :
                    Defendants.         :
----------------------------------------X
```

APPEARANCES

For the Plaintiff Jefferson Rodriguez:

Moshe C. Bobker
Cronin & Byczek, LLP
1983 Marcus Avenue, Suite C-120
Lake Success, New York 11042

For the Defendants:

Sarah B. Evans
Bruce Rosenbaum
Office of the New York City Corporation Counsel
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

   Jefferson Rodriguez brings this action against the City of New York ("City") and individual City defendants in their individual and official capacities, alleging (1) a claim under 42 U.S.C. § 1983 ("Section 1983") for unlawful retaliation in connection with the exercise of his First Amendment rights; (2) a claim that he was subjected to a hostile work environment on account of his race in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §2000e-2(a)(1); and (3) a claim under Section 1983 for false arrest.  Defendants have moved to dismiss the first two claims.  For the following reasons, the motion is granted.

## BACKGROUND

The following facts are taken from the complaint ("Complaint") and documents integral to it.[1]  Plaintiff was a uniformed member of the City Sheriff's Office ("Sheriff's Office") from November 1993 until the termination of his employment on March 12, 2010.  The Sheriff's Office is a division of the City Department of Finance.  Plaintiff is Hispanic, of Puerto Rican descent.

In October of 2006, plaintiff and seven other Hispanic deputies in the Sheriff's Office filed a lawsuit in the United States District Court for the Southern District of New York alleging that the Sheriff's Office discriminated against the plaintiffs based on race and national origin, and retaliated against them because they exercised their First Amendment rights to complain about discriminatory treatment.  Rodriguez v. City of New York, et al., 06cv1555 (RJH) ("Underlying Discrimination Action").  The case settled in January of 2008, with the City paying the plaintiffs $575,000.

---

[1] This Opinion also notes the outcomes of state judicial proceedings during the period of this litigation.

2

On October 7, 2008, plaintiff was injured in an automobile accident while acting within the scope of his employment with the Sheriff's Office.  Plaintiff thereafter applied for worker's compensation benefits, claiming to be physically unable to work.  Plaintiff was put on paid sick leave from the Sheriff's Office.

On June 30, 2009, while plaintiff was on paid leave, the Department of Finance brought charges him, accusing him of engaging in unauthorized outside employment while on paid leave ("Disciplinary Charges").  The Department of Finance accused plaintiff of operating a private security company and working as an armed security guard at two adult entertainment clubs in Queens while receiving worker's compensation benefits and claiming to be physically unable to work.  Plaintiff was suspended from his employment at the Sheriff's Office without pay on the day the charges were brought.  In response, plaintiff began to draw on his sick leave benefits.

As a result of the charges brought by the Department of Finance, the City controverted plaintiff's worker's compensation claim before the Worker's Compensation Board.  Following a Worker's Compensation Board Hearing, an administrative law judge ruled in plaintiff's favor.  The City appealed that decision to the Worker's Compensation Board.[2]  In December of 2009, having

---

[2] Although the Complaint states that plaintiff succeeded in the appeal, it does not explain the basis for that statement. Defendants point to a Memorandum of Board Panel Decision ("Decision") dated March 29, 2011, almost two months after the

run out of sick leave time, plaintiff requested permission from the Department of Finance to "borrow time."  The request was refused.

In January of 2010, a formal hearing was held in connection with the Disciplinary Charges against plaintiff before the City Office of Administrative Trials and Hearings ("OATH").  Plaintiff argued to the OATH Administrative Law Judge that the Disciplinary Charges were in retaliation for his participation in the Underlying Discrimination Action.  The hearing occurred on January 6 and 7.

On January 10, 2010, having been cleared by his physician to return to duty, plaintiff reported for work at the Sheriff's Office but was sent home on the ground that he was required to be cleared for duty by a doctor chosen by the City.  On January 27, 2010, plaintiff again attempted to report for duty and was arrested by the New York City Police Department on a charge of criminal trespass.  Plaintiff was convicted of criminal trespass in Queens County Criminal Court on May 29, 2012.  That conviction was reversed by the Supreme Court of New York, Appellate Term for the Second Department on February 7, 2014.  People v. Rodriguez,

---

Complaint was filed, in which the Worker's Compensation Board found that plaintiff made a material misrepresentation of his employment status for the purpose of influencing a determination regarding his entitlement to benefits and disqualified plaintiff from receiving further benefits.  Plaintiff's opposition to this motion does not take issue with the authenticity of the Decision. Accordingly, this Opinion disregards the Complaint's assertion of plaintiff's success on appeal.

4

988 N.Y.S.2d 524, 524 (App. Term 2014).  The City's application for leave to appeal that decision to the New York Court of Appeals is currently pending.

On March 5, 2010, the OATH Administrative Law Judge issued a Report and Recommendation ("OATH Report and Recommendation").  He found that plaintiff engaged in unauthorized outside employment while receiving worker's compensation benefits, submitted false documents stating that he was unable to work from October of 2008 to June of 2009, and made false statements at a Worker's Compensation board hearing.  Addressing plaintiff's allegation that the Disciplinary Charges were brought in retaliation for plaintiff's participation in the Underlying Discrimination Action, the Administrative Law Judge stated that "[t]his retaliation claim is premature."  The Administrative Law Judge then opined that

> [e]ven if a retaliation claim could be raised at this stage, [plaintiff] failed to show that the charges were prompted by his earlier complaint.  It appears that petitioner brought the charges because it believed that respondent committed fraud while on sick leave.

Plaintiff was fired by the Department of Finance on March 12, 2010.

Plaintiff brought a CPLR Article 78 proceeding ("Article 78 Proceeding") in New York Supreme Court on July 9, 2010, challenging the termination of his employment on the ground that the OATH Administrative Judge's finding that plaintiff engaged in unauthorized employment while receiving worker's compensation

benefits was not supported by substantial evidence.  That action was subsequently transferred to the Appellate Division, First Department ("First Department").  While that action was pending, plaintiff filed the instant action in this Court on February 3, 2011.  Plaintiff brought nine claims for violations of plaintiff's rights under the United States Constitution and federal and state law.  Defendants moved to dismiss the complaint on May 2.  On July 15, following a conference, this action was stayed pending resolution of the Article 78 Proceeding.  The defendants' motion to dismiss was dismissed without prejudice to renewal once the stay was lifted.

On January 29, 2013, the First Department issued a decision on Rodriguez's Article 78 appeal from the OATH Administrative Law Judge's finding that plaintiff had engaged in unauthorized outside employment while on sick leave from the Sheriff's Office and lied under oath in his worker's compensation hearing.  The First Department held that the OATH Administrative Law Judge's decision was supported by substantial evidence and that there was no reason to disturb his credibility findings.  Rodriguez v. Kelly, 958 N.Y.S.2d 301, 301 (1st Dept. 2013).

Following the resolution of plaintiff's Article 78 appeal, a conference was held in this action on May 30, 2014.  At that conference, plaintiff consented to dismiss all but three of his claims.  On consent, and by Order of June 2, the Court dismissed all but the following three claims:

1. Claim Three: that the City of New York, Nancy Goodman, Martha E. Stark, and David Frankel unlawfully retaliated against the Plaintiff for making a complaint of race discrimination by arresting the Plaintiff.

2. Claim Five: that the City of New York, Nancy Goodman, Martha E. Stark, and David Frankel subjected the Plaintiff to a hostile work environment on account of his race.

3. Claim Eight: that the City of New York, Martha E. Stark, Detective Leonard Mastrogiacomo, and David Frankel falsely arrested the plaintiff.

On June 25, the Court stayed motion practice on plaintiff's false arrest claim due to the City's pending application to the New York Court of Appeals to appeal the First Department's reversal of plaintiff's criminal trespass conviction. Defendants moved to dismiss plaintiff's two other claims on June 27. The motion was fully submitted on August 1.

## DISCUSSION

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement." Id. (citation omitted).

I. First Amendment Retaliation

Plaintiff alleges that defendants unlawfully retaliated against him for his participation in the Underlying Discrimination Action by arresting him.  Defendants move to dismiss this claim on the grounds that (1) the Underlying Discrimination Action did not constitute speech protected by the First Amendment; and (2) plaintiff has not plausibly pled a causal connection between his participation in the Underlying Discrimination Action and his arrest.[3]

To sustain a claim under Section 1983, a plaintiff must show that he was "deprived of rights, privileges, or immunities secured by the Constitution and laws [of the United States]" by a person acting under color of state law.  Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (citation omitted).  "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."  Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995).  Therefore, "the first step in any § 1983 claim is to identify the specific constitutional right allegedly infringed."  Pabon v.

---

[3] The defendants' original motion to dismiss addressed two adverse employment actions in addition to the plaintiff's arrest. They are that the defendants retaliated against him by controverting his claim for worker's compensation benefits and by firing him.  As agreed to at the May 30, 2014 conference, and reflected in the June 2 Order, plaintiff is no longer pursuing such claims.  After all, the First Department found in 2013 that there was substantial evidence that plaintiff had engaged in unauthorized outside employment while on sick leave from the

Wright, 459 F.3d 241, 252-53 (2d Cir. 2006) (citation omitted). Here, Plaintiff alleges a violation of his First Amendment rights through a retaliatory arrest.

To prevail on a First Amendment retaliation claim in the public employment context, a plaintiff must show "[1] that the speech at issue was protected, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between the protected speech and the adverse employment action." Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011) (citation omitted); cf. Holland v. Goord, 2014 WL 3360615, at *8 (2d Cir. July 10, 2014)(similar factors in prison inmate's First Amendment retaliation action).

Defendants first assert that plaintiff's lawsuit claiming race discrimination at his place of employment was not constitutionally protected speech.  Protected speech is "speech that a public employee is entitled to make without incurring any adverse employment actions by his or her government employer." Castine v. Zurlo, 2014 WL 2808085, at *4 n.5 (2d Cir. June 23, 2014).  "[P]ublic employees cannot state a claim for First Amendment retaliation unless (among other requirements) they speak as citizens on matters of public importance."  Id.; see also Ross v. Breslin, 693 F.3d 300, 305 (2d Cir. 2012) (same). "Speech by citizens on matters of public concern lies at the heart of the First Amendment . . . .  This remains true when

---

Sheriff's Office.

speech concerns information related to or learned through public employment." Lane v. Franks, 134 S. Ct. 2369, 2377 (2014).

> There is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees. For government employees are often in the best position to know what ails the agencies for which they work. The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it.

Id. (citing Waters v. Churchill, 511 U.S. 661, 674 (1994)).

There is a two-step inquiry to determine whether a public employee's speech is constitutionally protected from retaliation:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

Id. at 2378 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

> A matter of public concern is one that relates to any matter of political, social, or other concern to the community. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. Among the relevant considerations is whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.

Singer v. Ferro, 711 F.3d 334, 339 (2d Cir. 2013) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).  There is, accordingly, no "categorical approach that places all speech aimed at redressing personal grievances in the employment context

beyond the scope of the First Amendment." Huth v. Haslun, 598 F.3d 70, 74 (2d Cir. 2010). "While this determination may be somewhat fact-intensive, it presents a question of law for the court to resolve." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003).

Plaintiff's Underlying Discrimination Action was addressed to a matter of public concern. The content, form, and context of the Underlying Discrimination Action supports this conclusion. The action alleged a pattern of racial discrimination against Hispanic deputies by the Sheriff's Office. There is public value in preventing racial discrimination in public law enforcement agencies that extends beyond the redress of the employment injuries of those individuals directly affected.

The facts here are similar to those in Washington v. County. of Rockland, 373 F.3d 310 (2d Cir. 2004). In Washington, African American officers of the Rockland County Sheriff's Department alleged retaliation by their employer in response to their complaints about racially discriminatory treatment. Id. at 313. The Second Circuit stated that "Plaintiffs' complaints regarding the allegedly discriminatory treatment of African-American officers within [the Rockland County Sheriff's Department] surely was a matter of political, social, or other concern to the community, worthy of First Amendment protection." Id. at 320 (citation omitted).

Defendants' reliance on Ruotolo v. City of New York, 514

F.3d 184 (2d Cir. 2008), is misplaced. In Ruotolo, the Second Circuit held that an individual police officer's lawsuit alleging retaliation in connection with his filing of a report on health conditions at his precinct did not constitute First Amendment protected speech. Id. at 189. The police officer conceded on appeal that the retaliation claim premised on the filing of the report should be dismissed, but argued that the retaliation claim premised on his filing of a subsequent lawsuit survived. Id. at 188. The Court of Appeals reasoned that the lawsuit was not a matter of "public concern" because the plaintiff merely sought redress for his individual employment injuries and did not "seek to advance a public purpose." Id. at 189. Ruotolo is distinguishable from the instant case. First, the plaintiff in Ruotolo did not allege a pattern of public action against a class of employees, but only acts of retaliation against one individual for the authoring of one report. By contrast, in the Underlying Discrimination Action, eight plaintiffs alleged a pattern of racially discriminatory treatment against Hispanic members of the Sheriff's Office. That the plaintiffs also sought redress for their personal employment grievances does not remove their litigation from the protection of the First Amendment. See Huth, 598 F.3d at 74. Second, while concerns about health conditions at a police precinct may or may not be of general public interest, racial discrimination in public hiring is a prominent issue in the public consciousness and discourse. See Cotarelo v.

Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 252 (2d Cir. 2006) ("we have repeatedly held that discrimination in a government workplace is a matter of public concern."); Washington, 373 F.3d at 314.

Defendants also contend that plaintiff's retaliation claim must be dismissed because he has failed to plausibly plead a causal connection between the Underlying Discrimination Action and his arrest. Defendants point to the four-year gap between the filing of the Underlying Discrimination Action and the termination of plaintiff's employment.

For a First Amendment retaliation claim to succeed, a plaintiff must show that "the speech was at least a substantial or motivating factor in the adverse employment action." Garcia v. Hartford Police Dep't, 706 F.3d 120, 130 (2d Cir. 2013) (citation omitted); see also Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene, 746 F.3d 538, 544 (2d Cir. 2014). In addition to showing a causal connection by direct evidence, a plaintiff can indirectly "establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." Nagle, 663 F.3d at 110 (citation omitted). There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Co-op

13

Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001).
Accordingly, a court must "exercise its judgment about the
permissible inferences that can be drawn from temporal proximity
in the context of particular cases." Espinal v. Goord, 558 F.3d
119, 129 (2d Cir. 2009). The Court of Appeals recently
reaffirmed in the context of a Title VII retaliation claim that
"temporal proximity must be very close" to establish causation on
its own. Abrams v. Dep't of Pub. Safety, 2014 WL 3397609, at *8
(2d Cir. July 14, 2014) (quoting Clark Cnty. Sch. Dist. v.
Breeden, 532 U.S. 268, 273 (2001)).

> What can grow stale, over time and distance, is not an
> expressive act's First Amendment protection but its
> relevance to the plaintiff's employers . . . . It is
> quite plausible that an employer would simply have no
> interest, or lose any interest it once had, in an
> employee's long-ago protected speech.

Nagle, 663 F.3d at 109.

Plaintiff has pled no factual support at all for the
proposition that his participation in the Underlying
Discrimination Action promoted his arrest. For instance,
plaintiff has not pointed to any statements or actions by any
Department of Finance or Sheriff's Office official suggesting
that his arrest was the product of his participation in that
lawsuit, as opposed to the result of the defendants' belief that
plaintiff was trespassing on City property for the second time in
one month and not long after Disciplinary Charges had been filed
against plaintiff for engaging in unauthorized employment while

on paid leave.  Nor does plaintiff make any argument to connect his arrest to his participation in the Underlying Discrimination Action in his opposition to this motion.  As a result, there is nothing to give defendants fair notice of any theory that connects plaintiff's participation in the Underlying Discrimination Action to his arrest for trespass, or to create a plausible claim for that connection.

Plaintiff is also unable to indirectly show causation through a close temporal connection between his participation in the Underlying Discrimination Action and his arrest.  Gorman-Bakos, 252 F.3d at 554.  The arrest occurred more than three years after the Underlying Discrimination Action was instigated.  While there is no bright line to determine what constitutes adequate temporal proximity, id., the Court of Appeals cases in which temporal proximity alone has been held sufficient to establish causation addressed situations in which the temporal gap between the protected act and the adverse employment action consisted of weeks or months, not years.  Compare Nagle, 663 F.3d at 111 (six weeks gap sufficient to infer causation); Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (six months gap sufficient); Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F.3d 158, 168 (2d Cir. 2006) (three months gap sufficient); with Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 447 (2d Cir. 1999) (two year gap too long to infer causation in Title VII retaliation context).

In sum, plaintiff has failed to plead any facts that directly support a causal relationship between his participation in the Underlying Discrimination Lawsuit and his arrest. And causation cannot be inferred from the temporal gap between those two events. A claim must "be supported by factual allegations" to survive a motion to dismiss. Iqbal, 556 U.S. at 679. Plaintiff's First Amendment retaliation claim is not, and is accordingly dismissed.[4]

II. Title VII Hostile Work Environment

Plaintiff also brings a hostile work environment claim under Title VII. Defendants argue that plaintiff fails to plausibly plead that he was subjected to a hostile work environment on account of his race under Rule 8, Fed. R. Civ. P.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has explained that this prohibition extends to "a discriminatorily hostile or abusive [work] environment." Harris v. Forklift Sys., Inc., 510

---

[4] Although the only retaliation claim remaining following the Court's June 2 Order is plaintiff's First Amendment retaliation claim, plaintiff raises arguments in his opposition to this motion addressed to a Title VII retaliation claim. Because no Title VII retaliation claim exists at this point, those arguments are not addressed in this Opinion.

U.S. 17, 21 (1993).  A hostile work environment claim requires

> conduct (1) that is "objectively" severe or pervasive—that is, if it creates an environment that a reasonable person would find hostile or abusive [the "objective" requirement], (2) that the plaintiff subjectively perceives as hostile or abusive [the "subjective" requirement], and (3) that creates such an environment <u>because of plaintiff's . . . characteristic protected by Title VII)</u>.

<u>Gregory v. Daly</u>, 243 F.3d 687, 691-92 (2d Cir. 2001) (quoting <u>Harris</u>, 510 U.S. at 19) (citation omitted) (emphasis supplied); <u>see also</u> <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007) (<u>per curiam</u>).

Plaintiff has failed to plead any facts supporting a claim that he was subjected to a hostile work environment <u>because of</u> his race or national origin.  The Complaint alleges that he was subjected to retaliation because he participated in the Underlying Discrimination Action, not because he is a member of any protected class.  It is entirely devoid of factual allegations of instances of hostility or abuse tied to his race or national origin separate from his participation in the Underlying Discrimination Action.  In his opposition to this motion to dismiss, plaintiff's only defense of his hostile work environment claim is the following paragraph:

> It remains to be seen whether non-minority employees and employees who had not complained were arrested upon their arrival at work.  Plaintiff respectively submits that they were not.  As such, Plaintiff has stated a cause of action for racially hostile work environment and Defendants' motion to dismiss must be denied.

An entirely speculative allegation is insufficient to survive a

motion to dismiss under Rule 8, Fed. R. Civ. P.  A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  As such, plaintiff's claim predicated on the existence of a hostile work environment is dismissed.

## CONCLUSION

Defendants' June 27, 2014 motion to dismiss is granted. Plaintiff's First Amendment retaliation and hostile work environment claims are dismissed.

SO ORDERED:

Dated:   New York, New York
         August 20, 2014

```
             _____
                    DENISE COTE
             United States District Judge
```